UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ESSEX INSURANCE COMPANY                                        CIVIL ACTION

VERSUS                                                         NO.05-0784

BOURBON NITE-LIFE L.L.C., ET AL.                               SECTION "K" (3)

## ORDER

Before the Court is defendant Anthony Williams' Motion to Abstain and Dismiss or in the alternative, to Abstain and Stay this Case (Rec. Doc. No. 42) and defendants Bourbon Nite-Life, L.L.C., Brevort Enterprises, L.L.C., and Gaetana Fuoco Belyea Edin's Motion to Dismiss, or alternatively, to Stay Declaratory Judgment Action (Rec. Doc. No. 53). For the following reasons the Court now **GRANTS** both Motions.

## FACTS

Plaintiff, Essex Insurance Company, provided a policy of commercial general liability insurance to Bourbon Nite-Life, LLC, Brevort Enterprises, LLC, and USON Enterprises, LLC dba Razoo (Razoo's), under policy number 3CK4358. See Rec. Doc. No. 1, Compl., ¶ XVI. Defendants Mae and Levon Jones (individually and on behalf of their deceased son, Levon Jones), Anthony Williams, Clayton Spears, Dulymus "Deuce" McAllister, and Joseph Sobol, respectively, allegedly sustained personal injuries in connection with four separate incidents that

1

occurred at Razzoo Bar and Patio, a Bourbon Street nightclub. These incidents arose separately, allegedly out of altercations between Razzoo's patrons and bouncers, and resulted in varying degrees of injury, including the death of patron Levon Jones. Specifically, on January 8, 2004, defendant Spears was forcibly removed from Razzoo's by bouncers. As a result, he allegedly suffered severe facial lacerations and lost consciousness. On February 24, 2004, defendant McAllister was also allegedly placed in a chokehold by Razzoo's bouncers, losing consciousness. On November 19, 2004 defendant Sobol was allegedly thrown out of Razzoo's and, in the process, beaten up by Razzoo's bouncers. Finally, on December 31, 2004 an incident occurred at Razzoo's involving defendants Jones and Williams, both of whom were from out of state. Allegedly defendants Jones and Williams were denied entrance into Razzoo's due to Williams' attire and an altercation ensued between defendants and Razzoo's bouncers. Williams sustained personal injuries, and his companion Levon Jones died. In January of 2005 the first of several lawsuits arising from these incidents were filed against Razzoo's, starting with a Wrongful Death Claim and Survival Action filed by Mae and Levon Jones for their son's death. All of the ensuing actions were filed in Civil District Court for Orleans parish by the different plaintiffs but mainly against the same defendants.

    Razzoo's subsequently sought defense and indemnity from its insurer Essex under its policy of commercial general liability in connection with the allegations raised in these lawsuits. See Rec. Doc. No. 1, Compl., ¶ XXII. On March 11, 2005 Essex filed a Complaint for Declaratory Judgment (Rec. Doc. No. 1), alleging that it insured Bourbon Nite-Life, L.L.C., Brevort Enterprises, L.L.C. and Uson Enterprises, Ltd. under two commercial general liability policies. Essex named these parties as defendants, as well as the plaintiffs in the state court suits.

In its filing Essex alleged that coverage should be denied in the state court actions because of various exclusions founds in the policies themselves and sought a declaratory judgment that its polices do not provide coverage for any of the state court suits, that it has no duty to defend, and that it is entitled to costs and fees incurred in defending those actions.  On April 29, 2005 Essex filed a First Supplemental and Amended Complaint for Declaratory Judgment adding claims for interpleader and injunctive relief.  See Rec. Doc. No. 10.  In this amended pleading Essex, while maintaining it owed no coverage to any of the defendants, also plead that its aggregate limit of insurance for the policy year involved (February 13, 2004 through February 13, 2005) was $1,000,000.  Consequently, due to the potential of multiple claimants, Essex filed the action for interpleader and deposited a $1,000,000 bond with the Court, even while maintaining it owed no duty under the policy.  Essex also sought injunctive relief and filed a request for a Temporary Restraining Order prohibiting all defendants "from instituting or prosecuting any action in state or federal court against Essex affecting the polic[ies]."  See Rec. Doc. No. 17.  On June 23, 2005 the Court denied Essex's request for a temporary restraining order as premature, noting that an "interpleader action and the bond filed [by Essex] in the registry are contingent upon the Court's ruling against plaintiff in its Complaint for Declaratory Judgment, which the Court has not even determined."  See Rec. Doc. No. 19.

Defendants Anthony Williams, Bourbon Nite-Life, L.L.C., Brevort Enterprises, L.L.C., and Gaetana Fuoco Belyea Edin now request the Court to abstain from hearing the instant declaratory judgment complaint altogether, or alternatively, to stay the action pending resolution of the underlying claims in state court.  Defendants aver that Civil District Court in the parish of Orleans is the proper forum for hearing the claims involved.  Defendants further argue that

despite Essex's amended complaint, this action is merely one for declaratory judgment such that pursuant to *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), the Court may exercise its broad discretion and decline to hear the instant action.

Essex opposes the Motion, and the use of the *Wilton* standard, arguing instead for the narrower "exceptional circumstances" test found in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Essex argues that the instant action is not a "pure" declaratory judgment action because Essex is also seeking "coercive" remedies–interpleader and injunctive relief–in addition to a declaratory judgment. As such, Essex argues the Court must apply the *Colorado River* standard wherein a Court may abstain from hearing an action only under "exceptional circumstances" due to a Court's "virtually unflagging obligation . . . to exercise the jurisdiction given [it]." *Amer. Equity Ins. Co. v. Underwriters at Lloyds London and Certain Ins. Cos.*, *et al.*, 211 F.R.D. 298 (S.D. Tex. 2002). Essex argues that under *Colorado River*, the Court may not abstain because, *inter alia*, there is no conflicting exercise of jurisdiction over the property at issue (and even if there were, Essex previous deposition of a bond with the Court would satisfy such a conflict), the federal forum is not inconvenient, hearing all actions in one court favors judicial economy and the relief requested (interpleader) is not available procedurally in state court such that state court proceedings are not adequate to protect Essex's rights.

## LEGAL STANDARD

Essex first filed its Complaint for Declaratory Judgment denying coverage under the policy pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. See Rec. Doc. 1. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique

and substantial discretion in deciding whether to declare the rights of litigants." *Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371 (5th Cir. 1998)(*quoting Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). As such, "[i]t is well settled . . . that the granting of a declaratory judgment rests in the sound discretion of the trial court exercised in [the] public interest." Wright, Miller & Kane, *Federal Practice and Procedure*, Civil 3d § 2759; *see also Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 604 (5th Cir. 1983). The Supreme Court has held that the Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigations [; therefore,] . . . a district court is authorized in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial . . ." *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

For the reasons discussed below, and despite Essex's arguments to the contrary, this Court finds that use of the standard articulated in *Brillhart v. Excess Insurance Company of America,* 316 U.S.491 (1942) and reaffirmed in *Wilton* is proper. Where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court [entertaining the declaratory judgment action ] might be indulging in '[g]ratuitous interference'." *Wilton*, 515 U.S. at 283 "When a party seeks both injunctive and declaratory relief, the appropriateness of abstention must be assessed according to the doctrine of *Colorado River;* [however] the only potential exception to this general rule arises when a party's request for injunctive relief is either frivolous or is made solely avoid application of the *Brillhart* standard." *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 652 (5th Cir. 2000)(citing *PPG Indus. Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 679 (5th Cir. 1973)).

When Essex filed its complaint for declaratory judgment on March 11, 2005 it sought

5

solely declaratory relief. It was not until April 29, 2005, over a month later, that Essex added its claims for interpleader and injunctive relief. See Rec. Doc. No. 10, claims that this Court eventually found to be premature. See Rec. Doc. No. 19. "The historical and still the primary purpose of interpleader is to enable a neutral stakeholder . . . to shield itself from liability for paying over the stake to the wrong party. This is done by forcing all claimants to litigate their claims in a single action brought by the stakeholder." *Indianapolis Colts v. Mayor and City Council of Baltimore*, 733 F.2d 484, 486 (7th Cir. 1984). A court must decide "whether the stakeholder *legitimately* fears multiple vexation directed against a single fund," as it is not a purpose of the interpleader statute that it be used for forum shopping. 7 Wright, Miller, & Kane, *supra*, § 1704, at p. 369 (emphasis added). "When an interpleader action is brought in bad faith it must be dismissed." *Indianapolis Colts*, 733 F.2d at 487; *see also State Farm Fire and Cas. Co. v.Tashire*, 386 U.S. 523, 535-36 (1967).

Essex sought its interpleader pursuant to 28 U.S.C. § 1335, also known as "statutory interpleader."[1] Regarding the facts of the instant case, for Essex's claim of statutory interpleader

---

[1]The federal interpleader statute provides that:
(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if

(2) the plaintiff has deposited such money or property or has paid the amount of or

to apply it would require (1) two or more adverse claimants, (2) each claiming the proceeds of an insurance policy, whose claims exceed the policy limits. The requirement of adverse claimants is met where the claimants are competing to recover from a fund which is not large enough to satisfy all of the claims. *See Wasau Ins. Cos. v. Gifford*, 1990 WL 211485 *1, *2 (E.D. La. Dec. 13, 1990). The requirement of adversity of claimants is also met where the claims of two or more claimants are mutually exclusive. *See* 7 Wright, Miller, & Kane, *Federal Practice and Procedure* § 1705. Adversity is not met when a stakeholder may be liable to both parties because of multiple obligations.

      Essex has failed to demonstrate that the coercive remedies pled are applicable for the purposes of this case. Traditionally interpleader occurs when one party, disclaiming all interest in money or property in its possession, is faced with multiple judgments from different parties, each wanting the money or property for themselves. The instant situation differs in several ways, leading to the conclusion that Essex's bid for interpleader at this stage must fail. Firstly, whether there is indeed a single fund is in doubt. Essex claims it is liable only up to $1,000,000 and thus, it deposited same with the Court. Essex is not wholly neutral in this action, however, as Essex has yet to disclaim all rights to this money; in fact Essex asks this Court to determine it

---

        the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b)    Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

28 U.S.C. §1335 (1993).

owes nothing to anyone involved.  Furthermore, the facts also reveal that there are actually *two* insurance policies involved and effective during the relevant time periods of the four separate assaults at Razoo's.  Policy number 3CK4358 was effective from February 13, 2003 to February 13, 2004, and thus theoretically applies to the alleged assault of defendant Spears.  However, policy number 3CK4440, effective from February 13, 2004 to February 13, 2005, theoretically covers the time period of the McAllister, Sobol, and Jones/Williams assaults.  Even assuming Essex's contention of $1,000,000 as being the maximum aggregate limit allowed under a policy per year (as opposed to per incident, a fact which has yet to be determined), the Court fails to see how these *two* separate policies, theoretically resulting in *at least* two separate $1,000,000 obligations and covering four separate assaults, qualify as a "single fund" for the purposes of interpleader.

   Additionally, it is clear from the pleadings that Essex is wearing multiple hats in this litigation, and the Court remains unconvinced that the parties involved are actually adverse.  Essex may or may not owe a duty to Razzoo's under its policies.  And Razzoo's may or may not owe compensation to the state court plaintiffs, some of which Essex may or may not have to eventually satisfy.  However, despite being styled as mutual defendants in Essex's pleadings, there is no evidence that Razzoo's is in anyway competing with the state court plaintiffs for the proceeds (if any) of the Essex policies.  Thus, as the litigation currently stands, Essex could potentially be found liable to *both* Razzoo's and the state court plaintiffs.  As to Essex's involvement, the Court finds no true adversity exists between Razzoo's and the state court plaintiffs, because both parties have potentially different claims against the insurer.  *See Hartford Life and Accident Ins. Co. v. Eterna Benefits, LLC*, 1997 WL 726441 *1, *2 (N.D.Tex.

Nov. 17, 1997).  Furthermore, if Essex were found to be a claimant under the facts of this case "then interpleader would be proper in every case where an insurance company denied coverage, even if only one party was claiming a right to the proceeds." *Wausau Ins. Cos. v. Gifford*, 1990 WL 211485 *1, *3 (E.D. La. Dec. 13, 1990).

      Essex has failed to establish that interpleader is appropriate at this stage so the Court will ignore any coercive remedies for the purposes of deciding the appropriate standard to apply in evaluating defendants' instant motion to dismiss.  Essex's argument that *Colorado River* should apply because Essex is seeking coercive remedies thus falls away.  Notably, if allowed, Essex's argument would mean that every coverage dispute that should be decided under *Brillhart* and *Wilton* could be avoided by prematurely seeking an interpleader and thereby invoking the stricter *Colorado River* standard.  As a result, the Court finds the coercive relief sought by Essex in addition to declaratory judgment, is sought solely to avoid *Brillhart* and keep this action in federal court.  As explained above, this result is inappropriate, and the Court will thus discard coercive relief for the purposes of the instant motion.   As such, the *Wilton* standard controls.

      *Wilton* instructs courts to consider whether the claims of all parties in interest can satisfactorily be adjudicated in a pending state court proceeding.  *Wilton*, 515 U.S. at 283.  Prior to the *Wilton* decision, in *Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc.*, 996 F.2d 774 (5th Cir. 1993), the United States Court of Appeals for the Fifth Circuit set forth several factors for a court to consider in deciding whether to abstain from exercising jurisdiction.  Those factors include, but are not limited to, 1) whether there is a pending state action in which all of the matters in controversy can be fully litigated; 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; 3) whether the plaintiff engaged in forum

shopping in bringing this suit; 4) whether possible inequities in allowing the declaratory judgment action plaintiff to gain precedence in time or to change forum exist; 5) whether the Federal Court is a convenient forum for the parties and for the witnesses; and 6) whether retaining the lawsuit in Federal Court would serve the purpose of judicial economy. *Id.* at 778. Notably, whether there is a pending state action in which all the matters in controversy can be fully litigated is of paramount concern. *See Amer. Fidelity Ins. Co. v. Acadian Geophysical Services, Inc.*, 1997 WL 786233 (E.D.La. 1997). "It is well recognized that unnecessary interference with state court litigation should be avoided." Wright, Miller & Kane, *Federal Practice and Procedure*, Civil 3d § 2758.

## ANALYSIS

Essex's declaratory judgment action seeks determination by this Court of Essex's obligation to defend and indemnify Razzoo's in certain state court lawsuits arising from the incidents detailed above. Per the *Travelers* analysis, the Court finds Essex's action to be unnecessarily duplicative because the issue of coverage, including type, amount and extent as to each incident, can be more properly and efficiently addressed in the parallel state court actions now pending. Essex's insurance coverage has already been raised in the Jones' state court action, filed on January 5, 2005, wherein plaintiffs named as a defendant "ABC Insurance Company," the insurer of Razzoo's. Essex was actually named in the suit on March 9, 2005 when the Jones plaintiffs filed their amended petition, and the instant complaint for declaratory judgment was filed two days later on March 11, 2005. "Declaratory judgment relief may be denied . . . because of a pending state court proceeding in which the matters in controversy may be fully litigated . . ." *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991); *see also, Omega*

*Protein, Inc. v. Briscoe*, 2000 WL 777910 (E.D.La. 2000)(existence of a pending state court proceeding weighs heavily in favor of dismissal); *First Fin. Ins. Co. v. Delta Contracting Enters., Inc.*, 199 WL 1021440 (E.D.La. 1999)(declaratory judgment action dismissed when all matters can be fully litigated in state court proceedings).  By virtue of the Jones filing, Essex was aware of the state court action and its potential involvement prior to filing this complaint for declaratory judgment.  The Jones action qualifies as a pending state court proceeding in which the matters now in controversy in this action for declaratory judgment may be fully litigated.

The remaining five *Traveler's* factors set forth above also support dismissal.  First, as to anticipatory filing, the Court has no reason to doubt that plaintiff's declaratory judgment action was in fact filed in anticipation of future lawsuits.  Essex only filed this action after it became aware of the Jones suit and of the potential claims of the other plaintiffs, all of which were pled to include either "ABC" or "XYZ" insurance company as insurer of either the club and/or club owners and employees. The Court finds that after the Jones suit, Essex anticipated being brought in as a named defendant to these actions as well, once the other plaintiffs learned its identity, and thus, Essex filed this action in anticipation of these other state court suits.

Second, as stated above, it is likely that Essex is engaging in forum shopping.  Essex can easily raise its affirmative defense of non-coverage in the pending state court actions.  The Declaratory Judgment Act is not to be used to bring into federal court an affirmative defense which can be asserted in a pending state court action.  *See Int'l Assoc. of Entrepreneurs of Amer. v. Angoff*, 58 F.3d 1266 (8th Cir. 1995); *see also* Wright, Miller & Kane, *Federal Practice and Procedure*, Civil 3d, § 2758, at 521.

Third, possible inequities exist in allowing Essex to bring this action, since a decision of

11

this Court on the coverage issue will have a preclusive effect on any state court action.  Fourth, a federal court forum cannot be said to be more convenient than that of the state since most parties, and presumably a majority of essential witnesses, have contacts in Orleans Parish and the relevant courthouses are close in proximity.  Finally, there are issues of judicial economy since there is a pending state court action in which the coverage issues can be fully adjudicated.  Essex is already a defendant in state court, and that court can determine the facts, as well as  fault, damages, and coverage itself, whereas this Court would direct itself to the coverage issues alone.  Thus the Court will decline to hear Essex's declaratory judgment suit.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Anthony Williams' Motion to Abstain and Dismiss or in the alternative, to Abstain and Stay this Case (Rec. Doc. No. 42) and defendants Bourbon Nite-Life, L.L.C., Brevort Enterprises, L.L.C., and Gaetana Fuoco Belyea Edin's Motion to Dismiss, or alternatively, to Stay Declaratory Judgment Action (Rec. Doc. No. 53) is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff Essex Insurance Company's Complaint for Declaratory Judgment is hereby **DISMISSED** without prejudice.

New Orleans, Louisiana, this   9th   day of February, 2006.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**